## UNITED STATES v. SILVIA.

District Court, D. Wyoming. June 30, 1928.

No. 2783.

Albert D. Walton, U. S. Atty., and T. Paul Wilcox, Asst. U. S. Atty., both of Cheyenne, Wyo.

H. S. Ridgely and C. L. Rigdon, both of Cheyenne, Wyo., for defendant.

KENNEDY, District Judge. The defendant in this case has been informed against for a violation of the National Prohibition Act (27 USCA), charging possession of intoxicating liquor. The matter is before the court at this time upon a motion to quash and suppress for the alleged violation of defendant's rights under the search and seizure amendment to the Constitution. The pertinent facts necessary to a consideration of the point presented are:

One Nicholson made an affidavit that at a certain date he went to the dwelling house of the defendant and purchased of the wife of defendant a quart of red wine. This affidavit, together with one by a federal prohibition agent, alleging the location of the premises, the property sought to be discovered, and other jurisdictional facts, including an allegation, upon information and belief, that the wine so purchased contained more than one-half of 1 per cent. alcohol by volume, were the basis upon which a search warrant was sought and secured for a search of the premises described, which resulted in the discovery and apprehension of a quantity of liquor alleged to be within the proscription of the Prohibition Act.

The point raised by the defendant is that

the affidavit of the prohibition agent as to alcoholic content of the article purchased, being upon information and belief, could not be used as the basis for a search warrant, that the affidavit of the purchaser must be relied upon exclusively, and that this latter affidavit, merely describing the article as red wine, without specifying the alcoholic content, is insufficient, in that it does not bring the article within the scope of the Prohibition Act. Counsel for the government admit that the affidavit of the prohibition agent as to the description of the article, being founded upon information 'and belief, is not sufficient, but contend that the description of the article as wine in the affidavit of the purchaser is in itself sufficient.

This fairly presents the inquiry for the purpose of discussion here of "What is wine?". Wine is one of the oldest concoctions known in history. As we are properly known as a nation dominated by the Christian faith, a brief examination of what the Old and New Testaments have to say of wine ought to be pertinent. I take it that substantially the same diversified views in regard to the use of alcoholic beverages or stimulants existed in biblical days as they do in our own age, among saints and sinners alike. There were the same general abhorrence and injunction in regard to drunkenness as exists today. The examples of Noah, Lot, Nabal, and Ahasuerus are outstanding.

Some of the patriarchs were undoubtedly prohibitionists. This conclusion must be gathered in regard to Solomon, at least in his latter days, for in Proverbs 20: 1, the authorship of which book is attributed to him, we find the following:

"Wine is a mocker, strong drink is raging; and whosoever is deceived thereby is not wise."

And again in Proverbs 23: 31:

"Look not thou upon the wine when it is red, when it giveth his colour in the cup, when it moveth itself aright."

Likewise Daniel, where the following is recorded in Daniel 1: 5 and 8:

"And the king appointed them a daily provision of the king's meat, and of the wine which he drank; so nourishing them three years, that at the end thereof they might stand before the king."

"But Daniel purposed in his heart that he would not defile himself with the portion of the king's meat, nor with the wine which he drank; therefore he requested of the prince of the eunuchs that he might not defile himself."

In other places it is indicated that the use of wine should be restricted to appropriate times and places, as, for example, we note Judges 13: 7, where it is said:

"But he said unto me, Behold thou shalt conceive, and bear a son: and now drink no wine nor strong drink, neither eat any unclean thing; for the child shall be a Nazarite to God from the womb to the day of his death."

And Numbers 6: 3, 4:

"He shall separate himself from wine and strong drink, and shall drink no vinegar of wine, or vinegar of strong drink, neither shall he drink any liquor of grapes, nor eat moist grapes, or dried."

"All the days of his separation shall he eat nothing that is made of the vine tree, from the kernals even to the husk."

And Leviticus 10: 9:

"Do not drink wine nor strong drink, thou, nor thy sons with thee, when ye go into the tabernacle of the congregation, lest ye die; it shall be a statute forever throughout your generations."

And Ezekiel 44: 21:

"Neither shall any priest drink wine, when they enter into the inner court."

The use of wine to excess is condemned by St. Paul in his epistle to the Ephesians (5: 18):

"And be not drunk with wine, wherein is excess; but be filled with the spirit."

Again, Paul, in his epistle to Titus (2: 3), uses the following language:

"The aged women likewise, that they be in behavior as becometh holiness, not false accusers, not given to much wine, teachers of good things."

In the first epistle of Paul to Timothy, we find that eminent religious philosopher counseling the use of wine as a stimulant, where, in 1 Timothy 5: 23, he says:

"Drink no longer water, but use a little wine for thy stomach's sake and thine often infirmities."

The strength of wine is indicated in the illustration put forth by Christ, as recorded in Mark 2: 22, when He says:

"And no man putteth new wine into old bottles; else the new wine doth burst the bottles, and the wine is spilled, and the bottles will be marred; but new wine must be put into new bottles."

Lastly, it is recorded that Christ Himself turned water into wine, as is recorded in John 2: 7-10:

"Jesus saith unto them, Fill the water pots with water. And they filled them up to the brim.

"And He saith unto them, Draw out now, and bear unto the governor of the feast. And they bare it."

"When the ruler of the feast had tasted the water that was made wine, and knew not whence it was (but the servants which drew the water knew) the governor of the feast called the bridegroom,

"And saith unto him, Every man at the beginning doth set forth good wine; and when men have well drunk, then that which is worse; but thou hast kept the good wine until now."

To all unbiased minds, in the light of biblical history, the phrase "well drunk" would indicate that the wine of those days was of a stimulating nature.

In all the scriptural references which have been made, wine, as distinguished from any other of the well-known stimulants or beverages of this day, is exclusively mentioned, and the significance of the foregoing rehearsal is simply to show that wine throughout the ages has had the definite and certain meaning of a liquid with an alcoholic content, which will, if used to excess, create intoxication, and thereby signifying by its very name this particular constituent element.

Funk & Wagnalls' New Standard Dictionary defines wine as: "The fermented juice of the grape; in loose usage, the juice of the grape, whether fermented or not." And again, speaking of the effects, it is stated: "The effects of drinking wine; intoxication; as to be in wine." The phraseology "loose usage" indicates that the term in connection with unfermented juice of the grape is not an accepted and proper use of the term.

Coming down to the National Prohibition Act itself, we find wine is specifically included in the terms "liquor" and "intoxicating liquor." In 27 USCA 4, the following language is used:

"When used in this title (1) the word 'liquor' or the phrase 'intoxicating liquor' shall be construed to include alcohol, brandy, whisky, rum, gin, beer, ale, porter, and wine, and in addition thereto any spirituous, vinous, malt, or fermented liquor, liquids, and compounds, whether medicated, proprietary, patented, or not, and by whatever name called, containing one-half of 1 per centum or more of alcohol by volume which are fit for use for beverage purposes."

The court of the Ninth Circuit has, in a different situation to the one here involved, passed upon the point, where Judge Dietrich, in speaking for that court in Strada v. U. S., 281 F. at page 145, says:

"The principal contention, that the evidence is insufficient to support the verdict, in that there was no competent proof of the alcoholic content of the liquor sold, is apparently predicated upon the erroneous assumption that in every case under the Prohibition Act the government must charge, and prove by scientific analysis, that the liquor dispensed contained not less than one-half of 1 per cent. alcohol. But in the information it is here alleged that the defendant kept and sold 'wine and whisky,' and these, together with certain other beverages, are specifically declared by the act to be 'intoxicating liquor,' the keeping and sale of which is prohibited. Section 1 of title 2 of the act provides that:

" 'The word "liquor" or the phrase "intoxicating liquor" shall be construed to include alcohol, brandy, whisky, rum, gin, beer, ale, porter, and wine, and in addition thereto any spirituous, vinous, malt, or fermented liquor * * * by whatever name called, containing one-half of 1 per centum or more of alcohol by volume, which are fit for beverage purposes.'

"Whisky and wine and the other beverages specifically named were well-known articles of commerce, in common use, and needed no further description. In a prosecution for the sale of wine and whisky, therefore, it is unnecessary either to allege or prove the alcoholic content or fitness for use as a beverage; as wine and whisky they are prohibited. To be sure, the government has here charged, not only that the liquors were wine and whisky, but that they contained more than one-half of 1 per cent. alcohol. That it might do as a matter of precaution, but it was bound to prove only that they were wine and whisky, *or* that they contained the prohibited percentage of alcohol and were fit for use as beverages. Witnesses testified that they purchased wine and whisky, and their competency was not questioned. If from use or by any other means the citizen knows what whisky is, he may be a competent witness. It does not require a scientific expert to identify a well-known article of manufacture and commerce, in common use. In some instances the witnesses asked for wine, and apparently got wine; presumably they got what they asked for."

In discussing the same point, the Supreme Court of California in People v. Mueller, 168 Cal. 526, 528, 143 P. 750, at page 751, says:

"Wine is a well-known form of vinous liquor, and it is common knowledge that it contains alcohol. It is an alcoholic liquor of

the class described in the act as 'vinous liquor.' Its character is so well known that the court takes judicial notice of these qualities, and also that it contains considerably more than 1 per cent. by volume, of alcohol, that it is intoxicating when taken into the stomach, and that it may be used as a beverage. Black on Intoxicating Liquors, § 5; 23 Cyc. 61. We are not aware of any case holding specifically that judicial notice will be taken of the fact that ordinary wine contains more than 1 per cent. of alcohol, but we do not doubt that it will. The fact itself may easily be ascertained by reference to any dictionary, or treatise on the subject. Cent. Dic.; Stand. Dic.; Webster's Dic.; Enc. Brit. vol. 29. The designation of the liquor as 'wine,' therefore, is equivalent to a statement that it was a drinkable vinous liquor containing more than 1 per cent., by volume, of alcohol, and no further or more specific allegation was required. If there is any liquor known as 'wine,' containing less than 1 per cent. by volume, of alcohol, it is a fact so unusual and exceptional that it need not be contradicted in the information."

There are cases in which the term "beer" has been discussed, where authorities seem to be somewhat in conflict, as, for example, the decision of the Seventh Circuit in the case of Berry v. United States (C. C. A.) 275 F. 680; but the case at bar is not a "beer" case, but a "wine" case, and my effort has been directed in attempting to show that from time immemorial the term "wine" has carried with it the well-known and generally accepted significance of an alcoholic stimulant, and therefore as such should be considered as being within the contemplation of the legislative mind when the Prohibition Act was passed. Beer is a beverage of more modern invention, and is not blessed with any such surroundings of antiquity as is wine.

This cause, therefore, seems to present the same legal situation as though it might have been alleged that whisky was purchased at a dwelling house, and said purchase used as the basis for a search warrant, which article, purchased afterward, turned out to be nothing more than colored water. It could scarcely be contended that the term "whisky" would mean anything other than liquor containing a comparatively high content of alcohol; for that is what whisky is in itself, and, if containing less than one-half of 1 per cent. by volume, it could not reasonably be contended that it was whisky. As to what the article alleged to have been purchased actually was, if found to have been purchased, in the case at bar, remains yet to be determined, as it would be in the suppositious case. The only thing to be considered here is the sufficiency of the affidavit as the basis for a search warrant.

The allegation of the supporting affidavit, that a purchase of wine was made, is therefore sufficient to support the search warrant and the proceedings thereunder.

The motion to quash and suppress will accordingly be overruled and denied, reserving to defendant his proper exceptions.